

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Tom Seay
County Attorney
Potter County
Amarillo, Texas

Dear Sir:

Opinion No. 0-5021
Re: Procedure for enforc-
ing forfeiture of auto-
mobile resulting under
Article I, Section 44,
of the Texas Liquor Con-
trol Act.

        This is with reference to your letter requesting
the opinion of this department on the following matters:

        "1.  Where an officer seizes from a defend-
    ant a vehicle used for the transportation of il-
    licit alcoholic beverages pursuant to the provi-
    sions of Art. 1, Sec. 44 of the Texas Liquor Con-
    trol Act, and such vehicle belongs to a person
    other than the defendant, and a third person
    holds a valid existing lien against same, and
    neither the owner nor lien holder are present
    at the time of such seizure and make no inquiries
    of the Court or any other person showing that
    they have actual knowledge of such seizure or
    file any pleadings with reference thereto, can
    the Court properly order such vehicle sold where
    no citation or other notice has first been given
    to such owner and lien holder notifying them
    that such vehicle will be ordered sold unless
    good cause to the contrary is shown?

        "2.  If you answer the above question in
    the negative, please advise as to the manner and
    length of time for which such notice should be
    given.

"3. Should the order of sale of such a
vehicle and related proceedings be rendered in
connection with and as a part of the criminal
prosecution against the defendant, or is it nec-
essary for the State to file a separate suit on
the civil docket in order to obtain such an or-
der of sale?"

Article I, Section 44, of the Texas Liquor Con-
trol Act is taken, and for the most part, copied from Sec-
tion 26 of Title 2 of the National Prohibition Act (Title
27, Section 40, USCA), now repealed. Because the two acts
are almost identical insofar as the prescribed procedure
for forfeiture of vessels and vehicles used in unlawful
transportation of alcoholic beverages, the decisions of
the Federal Courts construing the National Prohibition Act
in this regard must be considered as persuasive in constru-
ing a similar provision of the Texas Liquor Control Act.

In Volume 39, page 264, of Texas Jurisprudence,
it is stated:

"§ 140. Adopted Statutes. -- A phrase,
provision or statute adopted from the laws of
another state or country will ordinarily be given
the same construction in Texas that it had re-
ceived in the jurisdiction from which it was bor-
rowed. If it had been given a fixed and definite
meaning by the courts of that jurisdiction, it
will be given the same meaning in Texas. The
rule rests upon the presumption that the Legis-
lature was aware of the judicial interpretation
given in the jurisdiction from which the stat-
ute was taken, and that in adopting such stat-
ute it intended also to accept such construc-
tion.

"Accordingly the previous construction of
an adopted statute will be regarded as a part
of the law, and will be followed unless it ap-
pears to be contrary to the spirit and policy
of the jurisprudence of Texas. Moreover, sub-
sequent constructions of an adopted statute by
the courts of the state from which it was import-
ed are strongly persuasive of the interpretation

that should be placed upon it in the adopting
state.

"   .   .   .   ."

Before discussing each of your questions, the
general subject of the procedure for forfeiture of automo-
biles under the repealed National Prohibition Act will be
noticed.

It is manifest that there is a lack of definite
procedure prescribed, both in the Texas Liquor Control Act
and in the National Prohibition Act, by which to determine
the relative rights of all parties concerned in the prop-
erty so as to preclude them at once and for all time from
further claiming any interest therein.

In the case of United States v. One Stephens Auto-
mobile, 272 Fed. Rep. 188, is found a full and complete dis-
cussion of many questions involved in proceedings for for-
feiture of automobiles under the repealed Federal Act.  For
a comprehensive understanding of the conclusions reached
in that case, as may be of assistance in construing the
Texas Act, the following language, deemed pertinent, is
quoted:

"   .   .   .   The act denounced by this section
is the transportation of liquors in violation of
law, and requires that, when a person is dis-
covered in the act, the liquors being transport-
ed shall be seized, the vehicle in which they
are being carried taken into possession by the
officer, and the person in charge thereof --
that is, of the liquors and vehicle -- arrest-
ed, all to follow practically concurrently with
a discovery of the part of the officer of a
person in the act of transporting liquors con-
trary to law.  The vehicle used in transporta-
tion of the liquors becomes the offending thing,
as the person discovered in the act is the of-
fender, and is to be dealt with as section 26
of title 2 of the act further provides.

"This section seems to contemplate that,
upon conviction of the person apprehended in
the transportation of the intoxicants, the ve-
hicle or other craft used in such transportation

shall be sold in any event, unless the owner show
good cause to the contrary. United States v.
Brockley (D. C.) 266 Fed. 1001. When sold, the
proceeds thereof, after the payment of the ex-
penses attending the seizure and sale and such
bona fide liens as are established against the
property, are required to be covered into the
treasury of the United States. After sale, all
liens against the property are transferred to
the proceeds. Bona fide liens may be estab-
lished by intervention or otherwise 'at said
hearing,' or in other proceeding brought for
the purpose. If, however, no one shall be
found claiming the vehicle, it is provided that
the taking of the same, with the description
thereof, shall be advertised in manner provided,
and, if no claimant shall appear within 10 days
after the last publication of the advertise-
ment, then that the property shall be sold
and the proceeds paid into the treasury of
the United States as miscellaneous receipts.

"It would appear that the procedure pro-
vided, where no one is found claiming the prop-
erty, is ample for divestiture of title, as
appropriate notice to interested parties is
provided, and an opportunity for any claimant
to appear and presumably to be heard is afford-
ed. But in the first instance, as we have
seen, the act directs that upon conviction
of the person arrested, except upon good cause
shown by the owner, the court shall order a
sale at public auction of the property seized,
that is, the vehicle or other craft used in
transporting the intoxicants, and then how the
proceeds shall be disposed of. No declaration
of forfeiture or condemnation of the property
seized is provided for. The provision for trans-
ferring the liens of claimants to the proceeds
of the sale would seem to indicate a legislative
purpose to extend to lien claimants the right
to pursue their claims to the extent of pro-
ceeding against the proceeds after sale; that
is to say, the sale itself was not designed to
cut off controversy as to the rights of bona
fide claimants touching the property seized and
ordered to be sold. So it is manifest that the
owner is not precluded by the order of sale

and the sale made in pursuance thereof, nor are the lien claimants.

"As to the procedure, the officer making the sale is required to pay all bona fide liens which are established by intervention or otherwise at 'said hearing' or other proceeding brought for the purpose. An ambiguity exists as to what is meant by the use of the words 'said hearing.' Do they relate to the trial of the person arrested, or to the hearing brought on by intervention or otherwise, or other proceeding brought for the purpose of determining the validity of the liens claimed, or their relative priorities?

"I am of the view that the latter was intended. The order of sale would seem to follow automatically upon conviction. There is no provision for a trial touching the rights of claimants to the property at the time of the trial of the person arrested. In fact, such a hearing would seem to be collateral to any issue as to the guilt of the person arrested. No notice of the seizure of the property is provided by which to preclude parties interested therein, unless it be that the seizure itself is deemed sufficient, why provide later for advertising the sale in case no one shall be found claiming the property, and opportunity for claimants to appear in pursuance of the advertisement?

"It is manifest that there is lack of definite procedure prescribed applicable in the first instance by which to determine the relative rights of all parties concerned in the property, so as to preclude them at once and for all time from further claiming any interest therein. Now, the government has, with a view to condemning the property seized and affording a hearing to all parties concerned, and disposing of the same as the law directs, instituted the present proceeding, through means of what is termed a libel, and the primary question is whether such proceeding is appropriate and can be availed of for the purpose.

"Information by the Attorney General is the usual procedure by which to recover in behalf of the government for any debt or contract for moneys due it and for any forfeiture due for the breach of a penal statute. 22 Cyc. 716. The petition filed in the present case answers the purposes of an information, though called a libel, and is obviously appropriate for the purpose of condemning the property involved, which in effect is forfeited to the government by reason of its improper use in transporting intoxicants in violation of law.

"Although it might be that section 26 has provided a sufficient procedure for condemning the property (United States v. Hydes (D.C.) 267 Fed. 470), which is doubtful, as appears from the foregoing review of the provisions of that section, I can see no possible objection to resorting to the proceeding by information for accomplishing the purpose, It is not an original proceeding, but is merely ancillary to the criminal cause. It affords a hearing to all parties concerned, and finally precludes all parties interested, and settles the title to the property condemned and the proceeds arising from a sale once and for all. Ancillary proceedings in aid of the main cause are common, and I need not stop to cite instances. I am of the opinion, therefore, that the present proceeding is not only appropriate, but that it is within the province of the court to entertain the same.

"Answering the second ground for the exceptions, it is already apparent, from the foregoing analysis of section 26 of title 2 of the National Prohibition Act, that the duty of the court is to order a sale of the property, not a forfeiture or condemnation, and therefore it is not essential that the forfeiture be declared in the criminal cause. . . .

" . . . .

"That conviction was had in the criminal cause is a pertinent allegation to the government's right to condemn the automobile. For the want of such allegation, the libel or information must be held to be insufficient. . . ."

In the case of General Motors Acceptance Corporation v. United States, 23 Fed. (2d) 799, by a Federal Court of Circuit Appeals in North Carolina, an automobile was seized by Federal Prohibition Agent, and upon seizure was found to contain thirty-five gallons of alcoholic liquor upon which the tax had not been paid. Upon motion of the United States' Attorney the court entered an order condemning and forfeiting the automobile under Section 26 of Title 2 of the National Prohibition Act (27 USCA, Section 40), and ordered the automobile turned over to the Prohibition Administrator for use in the enforcement of the National Prohibition Act. General Motors Acceptance Corporation held a valid but unrecorded lien on the automobile. This fact was well known to the Prohibition Agent seizing the automobile, yet the Acceptance Corporation was not notified of the proceeding and did not learn of it until the court had placed the vehicle in the hands of the Prohibition Agents for their use. In remanding the case to the lower court for further action the court said:

". . . .

"It would seem, in view of the fact that the government's agents knew of the claim of the appellant, that fair dealing would have required some notice to appellant of the proceeding to forfeit. Certainly the government and its officers can do no less than to accord to the parties at interest that same fair dealing and good faith that is required in dealings, with the government and its agents. In no other way can the enforcement of the law be made wholesomely respected.

". . . to acquire jurisdiction, the court may not rely alone upon the seizure of the prohibition agents, but there should be a libel filed or other appropriate proceeding had. This was not done in this case, but the order as entered was based solely upon the seizure of the prohibition agent. . . .

Honorable Tom Seay, page 8

"The government contends that, because the contract of sale held by the appellant was not recorded, it was not effective against the claim of the United States for forfeiture, and that under the North Carolina registration statute (C. S. | 3308 et seq., as amended), requiring the registering of such contracts to make them valid, as against creditors or purchasers for value, the failure to register renders appellant's lien void as against the government's claim of forfeiture. We cannot accept this view.

"Such laws, and in this the North Carolina law is specific, are designed for the protection of creditors or purchasers for value, without notice, and the government of the United States, in a forfeiture proceeding of this kind, does not come under either class. State v. Hall, 91 W. Va. 648, 114 S. E. 250; Motor Co. v. Jackson, 184 N. C. 328, 114 S. E. 479; United States v. Torres (D.C.) 291 F. 138. In the case last cited, in an able opinion, Judge Soper discusses this question, and properly, we think, reaches the conclusion that, even in the absence of recordation, the rights of the United States as defined by the National Prohibition Act are subordinated to the rights of bona fide lienors without notice of the illegal use of the carrying vehicle.

"Again, it is contended on behalf of the government that the appellant was guilty of laches in delaying to set up its claim until March 18, 1927, when the order of forfeiture was entered on October 4, 1926. . . . Appellant did not know of the proceeding under the National Prohibition Act until immediately before the filing of its petition. The government could have notified appellant of the action taken at any time, but did not do so, and appellant acted immediately on learning the true situation. Under these circumstances, we do not feel that the charge of laches can properly be laid at appellant's door.

". . . ."

Without going further to quote from additional cases relative to the general subject involved, it is deemed sufficient to state that we have carefully reviewed the many cases cited in the annotations under Section 40, Title 27, of USCA, the applicable sections of the Federal Digest, the exhaustive treatment given the subject in A. L. R. and many other authorities touching on the general subject. Since the principles announced in the cases just quoted from have never successfully been challenged, it is thought that those cases might be used as guides in proceedings for the forfeiture of automobiles under the Texas Liquor Control Act.

From the authorities thus reviewed, including the applicable provisions of the Texas Liquor Control Act, we will attempt to discuss the questions raised in your letter without reference to their numerical order of such questions.

It is only after the final conviction of the person in charge of the automobile at the time of its seizure that any proceeding may be had relative to the forfeiture. After the final conviction, which may in some instances consume many months especially if the defendant appeals, a petition should be filed in "a court of competent jurisdiction." The case is one in rem and the automobile is the real defendant. The petition should allege the seizure and circumstances surrounding same as well as the description of the automobile. It should allege the name of the person in charge of same at the time of the seizure and the fact of such persons' final conviction. It would not be improper we think to allege that the proceeding is one to enforce the forfeiture that has resulted under Section 44 of Article I of the Texas Liquor Control Act from the conviction of unlawful transportation of intoxicating liquor, in the commission of which offense the automobile was used (Phariss v. Kimbrough, 118 S. W. (2d) 661). The prayer should ask for a judicial decree of forfeiture and for an order of sale and the distribution of the proceeds of the sale in accordance with the provisions of Article I, Section 44, of the Texas Liquor Control Act. In order to afford all interested parties an opportunity of being heard, the petition should be presented to the Judge of the court having jurisdiction who should set the matter down for hearing, allowing sufficient time for those interested in such case to be notified. No particular form of notice is prescribed. In this connection, we think it would be proper for those officers interested in the prosecution to ascertain, as best they can, those claiming an interest in the vehicle and to notify such parties

of such hearing. Neither the form of the notice nor the length of time required are prescribed. If the owner of the vehicle has been duly notified of the hearing and fails to appear, doubtless his rights in the vehicle will be terminated. If the owner has not been notified of the hearing and does not appear and assert his claim, then the vehicle should be advertised as prescribed in the statutes. After the hearing at which interested parties must have had an opportunity to be heard, and if the car is ordered sold, it is provided:

> "The officer making the sale . . . shall pay all liens, according to their priorities, which are established by intervention or otherwise at said hearing or in other proceedings brought for said purpose."

What is a "court of competent jurisdiction" as used in the Act? Obviously the criminal proceeding against the defendant must be brought in the county court. Under the great weight of authority in the many federal cases reviewed, and under Phariss v. Kimbrough, supra, it would appear that upon the conviction of the one in charge, the automobile is forfeited "ipso facto." Any proceeding brought thereafter to "secure" or "enforce and forfeiture," as those terms are used in Phariss v. Kimbrough is necessarily ancillary or "a mere incident to the criminal case." In Willis, et al., v. State, 150 S. W. 904, it is said:

> "That provision of our Contitution (article 5, | 8), which gives the district court jurisdiction 'of all suits in behalf of the state to recover penalties, forfeitures and escheats,' applies and has always been construed by all the courts to mean exclusively civil cases. And has never been construed by any court to apply to forfeitures of bail bonds in criminal cases. Both the Supreme Court and this court hold that the forfeiture of bail bonds in criminal cases is a mere incident to the criminal case, and that, while after the rendition of the judgment nisi the proceedings shall be conducted as civil cases, yet that all such cases are criminal cases and not civil cases, and the state cannot appeal therefrom. See some of the cases collated from this and the Supreme Court in section 437, p. 320, of White's C. C. P."

Since a proceeding to forfeit a bail bond "is a mere incident to the criminal case," we think that by the same analogy, a proceeding to secure or enforce a forfeiture of an automobile under the Texas Liquor Control Act is likewise a "mere incident of the criminal case." It is not an original proceeding but is merely ancillary to the criminal cause, as is pointed out in United States v. One Stephens Automobile, supra. If the county court has jurisdiction of the original offense, it necessarily follows that it has jurisdiction of a subsequent proceeding to "enforce the forfeiture that has resulted under the statute." The value of the automobile, in our opinion, is not material in determining jurisdiction. Under authority of Willis, et al., v. State, we think the proceeding to enforce the forfeiture should be filed on the criminal docket.

For a fuller understanding of the question herein discussed some of the decisions pertaining to evidence and burden of proof will be noticed.

Under Section 40 of 27 USCA (41 Stat. 315), as well as under Section 44 of Article I of the Texas Liquor Control Act, the burden is upon the lienor to establish that his lien is bona fide and that it was created without his having any notice or reason to believe that the carrying vehicle was being used, or was to be used, for the illegal transportation of liquor.

The good faith of the parties, and lack of knowledge or reason to apprehend, on the vendor's part, that the vehicle upon which the lien is taken or reserved will be used in violation of the law, must be established as of the date of its creation.

This burden is equally incumbent upon the assignor and the assignee of the lien, whichever is claiming rights under it. United States v. One Buick Coupe Auto, 58 Fed. (2d) 387. See also 47 A.L.R. 1058; 61 A.L.R. 554; 73 A.L.R. 1093; and 82 A.L.R. 609.

In the case of C. I. T. Corporation v. United States, 40 Fed. (2d) 825, by Circuit Court of Appeals, one C. A. Lee purchased an automobile from one Marshall O'Neal. Shortly after the sale the purchase note was disposed of to the C.I.T. Corporation, which is a dealer in this character of commercial paper. Both Lee and O'Neal lived in a small town in South Dakota where the sale occurred. The purchaser of the note

had its office in a distant city far from the place of the original sale. It is undisputed that the C. I. T. Corporation had no notice of the contemplated illegal use of the car, or before seizure, of the actual illegal use. The Court held however that if O'Neal, the original seller, had such notice, that such notice would be imputed to his assignee, C. I. T. Corporation.

In this case the Court said:

"'Notice,' within this statute, has the ordinary legal meaning of knowledge of the illegal use or of facts which would put a reasonably prudent man upon inquiry. The evidence is as follows: O'Neal had lived all his life in Huron, a small city in South Dakota. For about seven years he had been in the grocery business and for about eighteen months had been selling automobiles also. He had known C. A. Lee for about seven years and had a 'speaking acquaintance' with his son, Henry Lee. He knew that C. A. Lee had been in the pool hall business, but for a period of 'a few years' he was not doing anything. At the time of the sale he did not know the business of Henry Lee nor of his reputation and made no inquiry in that regard. Henry Lee had purchased a Hudson car theretofore and had brought his father to O'Neal in regard to the purchase of this car. He testified he did not know of the contemplated illegal use of the car or of its being so used before it was seized by the federal authorities. He made no investigation of the business of C. A. Lee or for what purpose the car was to be used, but did know that he had property. To meet this proof, the government established that the purchaser and his convicted son lived together in Huron and were actively engaged in 'bootlegging' at the time of this sale. A prohibition officer, a deputy sheriff, the chief of police, and a patrolman testified positively that the reputation of the purchaser, at the time of the sale in Huron, was that he was a 'bootlegger.' On the other hand, there was the testimony of one witness, another automobile dealer who had sold one of the Lees a car, that he did not know of this reputation.

"Considering that Huron is not a large place and therefore matters of general knowledge could scarcely escape the attention of a merchant who had lived there all of his life and been engaged in business for seven years, the court was in no wise bound to believe the testimony of O'Neal that he had never heard of the reputation of C. A. Lee. Where the question requiring proof involves a state of knowledge or of mind, triers of fact justly rely upon circumstances which would show knowledge or state of mind rather than upon the bare statement of the interested party himself. Where it is shown by evidence, which the trial court believes, that the purchaser had the general reputation in a small town of being a 'bootlegger' at the time of the creation of the lien, the lienor cannot be held to have conclusively established lack of notice merely by testifying that he did not then know of such business or of such reputation. Where such a set of circumstances is shown by the evidence, it is for the trial court to determine whether the lienor did or did not have knowledge of such business or reputation and such knowledge would be notice within the above statute. The burden of proof is upon the lienor to establish lack of notice. United States v. One Dodge Coupe, etc., (D. C. ) 13 F. (2d) 1019; United States v. One W. W. Shaw Automobile Taxi, etc., (D. C.) 272 F. 491, and Shelliday v. United States (C. C. A.) 25 F. (2d) 372, 374."

For other cases holding that the burden is on the claimant to establish that his lien is bona fide and was made without notice that the vehicle was to be used in violating the liquor laws, see The Harbour Trader, 42 Fed. (2d) 858, and U. S. v. Bailey, 42 Fed. (2d) 908.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By E. G. Pharr

E. G. Pharr
Assistant

EGP:db



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN